# IN THE COURT OF APPEALS OF IOWA

No. 14-1143
Filed September 10, 2015

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**BLAKE ALLEN HUFFMAN,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple, Judge.

Defendant appeals from his conviction and sentence for five counts of second-degree sexual abuse, one count of third-degree sexual abuse, and one count of assault with intent to commit sexual abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Aaron Rogers, Assistant Attorney General, Kirby D. Schmidt, County Attorney, and Erika Allen, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

Blake Huffman appeals from his conviction and sentence for five counts of second-degree sexual abuse, one count of third-degree sexual abuse, and one count of assault with intent to commit sexual abuse. He maintains the district court abused its discretion by allowing an expert witness to testify as to the credibility of the two complaining witnesses. In the alternative, if we find error was not preserved, Huffman maintains trial counsel was ineffective for allowing the expert witness to vouch for the witness's credibility without proper objections. Huffman maintains counsel was also ineffective for failing to move to dismiss the strict liability charges because the application of strict liability against a juvenile violates his right to substantive due process. Finally, if we do not remand for a new trial for any of the aforementioned claims of error, Huffman maintains he must be resentenced after an individualized hearing because he received a long aggregate sentence for acts committed as a juvenile.

Because we find the expert testimony, allowed in over trial counsel's objection, was cumulative, Huffman was not prejudiced by its admission, and reversal is not warranted. Because error was not preserved on the other testimony Huffman complains of, we analyze his claims of error under an ineffective-assistance framework, and we find he has not established he was prejudiced by counsel's failure to object. Moreover, we find Huffman's trial counsel had no duty to move to dismiss the strict liability crimes as violating Huffman's right to due process. Finally, because the district court provided Huffman a "meaningful opportunity to obtain release based on demonstrated

maturity and rehabilitation," and did not impose any mandatory minimums, there is no need for a separate individualized hearing. We affirm.

**I. Background Facts and Proceedings.**

On February 26, 2013, Huffman was charged by trial information with five counts of sexual abuse in the second degree (Counts I–V), one count of sexual abuse in the third degree (Count VI), and one count of assault with intent to commit sexual abuse (Count VII). Each of the second-degree-sexual-abuse charges were alleged to have occurred while Huffman was under the age of eighteen. The counts of sexual abuse in the third degree and assault with intent to commit sexual abuse were alleged to have occurred while Huffman was age fourteen to eighteen.

Huffman pled not guilty to each of the charges, and the matter proceeded to trial February 24–26, 2014. At trial, Katie Strub, a forensic interviewer who works with children who are suspected victims of abuse, testified as an expert witness for the State. She was asked about child abuse dynamics in general, as well as her interviews with John Doe and Jane Doe.[1] The following exchange occurred during direct examination of Strub:

> Q: So when you talk to children who are coming in and telling you about this, you know, it sounds like there's kind of a wide variety of how people react to things; correct? A: Yes.
> Q: Are there some flags that you look for? Some red flags, I guess? A: In regard to?
> Q: In regard to when they come in and talk to you. I mean, if they come in and they use words that are completely above kind of their developmental stage, is that something that concerns you? A: Yes. We want to make sure that what the children tell us is developmentally appropriate. So we would expect a three-year-old

---

[1] The children were referred to as Jane Doe and John Doe in the trial information. Because the children share initials, we continue to use the pseudonyms here.

to describe something to us in words that a three-year-old understands instead of in words that we would expect only an adult to use. Just the same way we would expect a 14-year-old to talk to us in 14-year-old terms instead of in a way that a three-year-old would talk to us.

We want to make sure that, like I said before, the kids are using their own words. They're not using someone else's words and they're not making something up.

. . . .

Q: Do you remember if she ever mentioned a knife? A: I don't recall [Jane Doe] mentioning a knife.

Q: Would that surprise you? A: If someone said she did?

Q: No, if, say, she said now that there had been a knife? A: No.

Q: Why? A: Because—

DEFENSE COUNSEL: Objection, Your Honor. I think this is starting to get into the province of the jury as far as truthfulness.

THE COURT: It's overruled.

Q: Go ahead. A: Because like we've talked about before, sometimes kids or just people remember different things later on than at a time they were initially questioned about something.

Q: Now you also talked to [John Doe]? A: Yes.

. . . .

Q: And even at the time that they talked with you they weren't able to necessarily pin down the date that this happened? A: Correct. They were able to give me approximate ages, but we don't really ask the children to pin down dates with us because generally kids aren't able to give us a lot of specific information about dates, especially if they were little when something happened.

. . . .

Q: So if they were able to talk about the year in school they were because they remember a particular teacher or they remember a particular event, that's more how kids are able to remember time than anything else? A: Usually, yes.

Q: And what about this idea that [Jane Doe] talked about there being more times that it happened and she could only talk about a few? Is that typical? A: Yes.

Q: Tell us about that. A: Because if something similar happened over and over again, it would be unlikely for a child to be able to tell us everything that happened time one, time two, time 15, time 37. Especially if it was a very similar act over and over and over. Sometimes kids then, just as we adults, would start to talk about something that typically happened or usually happened rather than being able to separate each specific incident.

Q: And it's easier, would you not agree with me, to separate something if there's a particular part of that that stands out to them? A: Yes.

On redirect, the following occurred:

Q: So there were things that she didn't tell you that—would you consider that to be normal? A: Yes. I didn't ask her.

Q: And there was some idea that somehow, you know, you would find it unusual if [John Doe] and [Jane Doe] hadn't spoken at some point about what happened to them? A: Yes.

Q: To each other? But you asked them both if they knew what had been done to the other and when they talked to you they hadn't known what had been done to the other. A: Correct.

Q: You also talked about, on cross, this idea of family dynamics and how we can't ever know about somebody's family dynamic, but you were giving us some features that you look for when kids talk about using appropriate language. Did [John Doe] and [Jane Doe] use appropriate language? A: Yes.

Q: And them being able to correct you if you were wrong about something and both of them were able to do that? A: Yes.

Q: So those things didn't appear in your interviews? A: Correct.

At the conclusion of trial, the jury found Huffman guilty of each of the seven charges.

On March 27, 2014, Huffman filed a motion to continue sentencing. He maintained that because he was a juvenile at the time of the offenses, the court should following the standards articulated in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), and provide him with an individualized sentencing hearing. The State resisted the motion, and the district court denied it.

Huffman was sentenced to a term of incarceration not to exceed twenty-five years for each of the five counts of sexual abuse in the second degree (Counts I-V), a term of incarceration not to exceed ten years for sexual abuse in the third degree (Count VI), and a term of incarceration not to exceed two years for assault with intent to commit sexual abuse (Count VII). The court considered

Iowa Code sections 902.12 and 907.3 (2013) and "opted not to impose the mandatory minimums." The court ran counts I, II, III, IV, and VII concurrently to each other. The court also ran counts V and VI concurrently to each other, but consecutive to counts I, II, III, IV, and VII. In total, Huffman was sentenced to a term of incarceration not to exceed sixty years with no mandatory minimum.

Huffman appeals.

## II. Standard of Review.

We review the admission of the objected to testimony for an abuse of discretion. *See State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). The district court abuses its discretion when it exercises on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.*

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims of ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

## III. Discussion.

### A. Preservation of Error.

Huffman maintains the district court abused its discretion in admitting a line of questions and answers that he complains constituted vouching for the

witnesses. However, Huffman's trial attorney objected to only one of the questions Huffman maintains were improperly admitted. "A timely and specific objection is required to alert the judge to the issue raised and enable opposing counsel to take corrective action to remedy the defect if possible." *Roberts v. Newville*, 554 N.W.2d 298, 300 (Iowa Ct. App. 1996). "Generally, the proper timing of an objection follows the question propounded, since the question generally reveals whether inadmissible evidence is requested." *Id.* Moreover, Huffman's attorney did not request nor receive a standing objection to the testimony. *See Prestype Inc. v. Carr*, 248 N.W.2d 111, 117 (Iowa 1976) ("Although a standing objection may save trial time and be convenient for both court and counsel, it makes appellate review infinitely more difficult and, for the litigants more uncertain. The allowance of standing objections in trials at law is ordinarily not to be recommended."). We consider the one question Huffman's trial counsel objected to under the abuse-of-discretion standard. Otherwise, because Huffman did not object to the testimony he now claims is improper, error was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

**B. Admission of Evidence.**

Huffman maintains the district court abused its discretion when it allowed the expert's testimony over an objection because the testimony constituted vouching for the credibility of the complaining witness. During direct examination, the following occurred:

> Q: Do you remember if she ever mentioned a knife? A: I don't recall [Jane Doe] mentioning a knife.
> Q: Would that surprise you? A: If someone said she did?
> Q: No, if, say, she said now that there had been a knife? A: No.
> Q: Why? A: Because—
> DEFENSE COUNSEL: Objection, Your Honor. I think this is starting to get into the province of the jury as far as truthfulness.
> THE COURT: It's overruled.
> Q: Go ahead. A: Because like we've talked about before, sometimes kids of just people remember different things later on than at a time they were initially questioned about something.

While we believe the objection was proper and should have been sustained, the expert's response to the question provided the jury insight into the victim's memory and did not invade the province of the jury by commenting on the credibility of the witness. *See State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014). We start with the presumption that the substantial rights of the defendant have been affected in cases of nonconstitutional error. *Id.* However, here the expert's testimony was "merely cumulative."[2] *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) ("One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative."). Thus, reversal is not warranted. *See State v. Wixom*, 599 N.W.2d 481, 484 (Iowa Ct. App. 1999) ("To warrant reversal, an error must have prejudiced the defendant. When evidence is merely cumulative, it cannot be said to injuriously affect the complaining party's rights.").

---

[2] Earlier, Strub had been asked—without objection—"about when a child would first give this information out, and you said it would be different between the first time they talked about it, the time they talked to you, and the time it gets to court." She responded, in part, "Well, sometimes children's memories change over time. Now that doesn't mean it's a different memory. It just might mean they have better words to describe what's happened . . . ."

### C. Ineffective Assistance of Counsel.

"Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules." *Everett v. State*, 789 N.W.2d 151, 156 (Iowa 2010). To prevail on a claim of ineffective assistance of counsel, Huffman must prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). To prove counsel failed to perform an essential duty, he must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Huffman must overcome a strong presumption of counsel's competence. *Id.* at 689. To establish prejudice, he must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015). We "will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail." *Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989). The claim fails if either element is lacking. *See Everett*, 789 N.W.2d at 159.

**1. Vouching by expert witness.** Huffman maintains he received ineffective assistance because trial counsel allowed an expert witness to vouch for the credibility of the complaining witnesses without objecting.

Our supreme court recently decided a trio of cases regarding what constitutes vouching for a witness, both directly and indirectly. *See Dudley*, 856

N.W.2d at 668; *Brown*, 856 N.W.2d at 685; *State v. Jaquez*, 856 N.W.2d 663

(Iowa 2014). In each case, the court expressed the following:

> Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility. Our system of justice vests the jury with the function of evaluating a witness's credibility. The reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion." Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence. Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony.

*Dudley*, 856 N.W.2d at 676; *Brown*, 856 N.W.2d at 689; *Jaquez*, 856 N.W.2d at

665.

Huffman challenges several comments made by the State's expert

witness, Katie Strub. As instructed by our supreme court in *Dudley,* we must

break down each statement Huffman "claims as objectionable to determine if the

State crossed the line." 856 N.W.2d at 678. During the direct examination of

Strub, the following exchange occurred:

> Q: And what about this idea that [Jane Doe] talked about there being more times than it happened and she could only talk about a few? Is that typical? A: Yes.
> Q: Tell us about that. A: Because if something similar happened over and over again, it would be unlikely for a child to be able to tell us everything that happened time one, time two, time 15, time 37. Especially if it was a very similar act over and over and over. Sometimes kids then, just as we adults, would start to talk about something that typically happened or usually happened rather than being able to separate each specific incident.
> Q: And it's easier, would you not agree with me, to separate something if there's a particular part of that that stands out to them? A: Yes.

Huffman maintains that Strub vouched for Jane Doe's credibility by describing it as "typical" in children reporting sexual abuse. In *Dudley*, our supreme court held that allowing an expert witness to testify a child's physical manifestation or symptoms are consistent with sexual abuse trauma "allows the expert witness to indirectly vouch that the victim was telling the truth because the expert opines the symptoms are consistent with child abuse." 856 N.W.2d at 677. We do not believe Strub's testimony constitutes vouching. Rather, we believe the expert was simply providing the jury information about the ability of a child to remember details. Although the question relating to what is "typical" may have been objectionable, Strub's response did not cross the line into vouching for the complaining witnesses.

Huffman also maintains trial counsel had a duty to object to Strub's testimony regarding developmentally-appropriate language. On redirect, the following occurred:

> Q: You also talked about, on cross, this idea of family dynamics and how we can't ever know about somebody's family dynamic, but you were giving us some features that you look for when kids talk about using appropriate language. Did [John Doe] and [Jane Doe] use appropriate language? A: Yes.
> Q: And them being able to correct you if you were wrong about something and both of them were able to do that? A: Yes.
> Q: So those things didn't appear in your interviews? A: Correct.

In *Dudley*, the expert witness testified that the witness's statements were consistent throughout the forensic interview. *Id.* at 678. Our supreme court found this did not constitute vouching because the expert "was merely stating the fact that throughout the interview [the witness] never changed her story as to

events with [the defendant]." *Id.* at 678. "This information gives the jury an insight into the victim's memory and knowledge of the facts. With this information as part of the evidence, the jury still had to decide if [the witness's] complaints against [the defendant] were credible." *Id.* (internal citation omitted). Here, the expert witness's testimony that both Jane Doe and John Doe used developmentally appropriate language provided the jury some perception about their knowledge of the facts. It does not vouch for the truthfulness of the statements and leaves the question of credibility to the jury. Thus, the testimony was admissible, and Huffman's attorney did not have a duty to object to the testimony. *See Utter*, 803 N.W.2d at 652.

We also do not believe Huffman has established that he suffered prejudice because of trial counsel's failure to act.

**2. Strict liability.** Huffman maintains prosecution for strict liability crimes that were committed as a juvenile violated his right to substantive due process, thus counsel was ineffective for failing to move to dismiss those counts.

Huffman maintains "[i]t is fundamentally unfair to assume that [he] or any other minor has the maturity, judgment, risk aversion, or impulse control to assume the risk that adults assume within a strict liability context." He relies on recent decisions by our supreme court discussing the difference in the cognitive abilities of juveniles and adults. *See State v. Null*, 836 N.W.2d 41, 52–56 (Iowa 2013) (providing an overview of juveniles, legal responsibility, and diminished culpability); *see also State v. Lyle*, 854 N.W.2d 378, 403 (Iowa 2014) ("Mandatory minimum sentencing results in cruel and unusual punishment due to the differences between children and adults. This rationale applies to all crimes,

and no principle basis exists to cabin the protection for only the most serious crimes.").

In *State v. Tague*, 310 N.W.2d 209, 211 (Iowa 1981), the defendant challenged the strict liability element of sexual abuse in the third degree as a violation of his due process rights. The supreme court recognized that "strict liability concepts are commonly used in the public interest to put the burden upon the person standing in a responsible relation to a public danger even though he might otherwise be innocent." *Tague*, 310 N.W.2d at 211. The court noted that sex offenses are common examples and held the strict liability element did not violate the defendant's right to due process. *Id.* Moreover, the recent supreme court cases recognizing the difference between juveniles and adults evaluate the diminished culpability of juveniles for sentencing purposes, not criminal liability. *See Miller*, 132 S. Ct. at 2464 ("[C]hildren are constitutionally different from adults *for purposes of sentencing.*" (Emphasis added.)); *see also Lyle*, 854 N.W.2d at 403 ("Article I, section 17 only prohibits the one-size-fits-all mandatory sentencing for juveniles.").

Huffman has not cited cases from our jurisdiction nor any others that have adopted the conclusion he urges. Without any suggestion by our supreme court that it may distinguish the culpability of juveniles from adults in strict liability crimes, we decline to invade those waters. Thus, trial counsel had no duty to pursue a meritless issue. *See State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011) ("[Defendant's] trial counsel has no duty to pursue a meritless issue . . . .").

**D. Individualized Sentencing Hearing.**

Huffman maintains his sentence is cruel and unusual in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution. He maintains he should have received an individualized sentencing hearing where the district court considered enumerated mitigating factors before sentencing him.

An individualized sentencing hearing requires the court to consider several factors:

> (1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

*State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013) (citing *Miller*, 132 S. Ct. at 2468).

Additionally, our supreme court has stated that the purpose of an individualized sentencing hearing is for the court to "undertake an analysis of everything the Supreme Court said in *Roper* and *Graham* about youth." *Null*, 836 N.W.2d at 74 (internal quotations marks omitted). The trial court "must recognize that because children are constitutionally different from adults, they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing." *Id.* (internal quotations marks omitted). The court must also recognize that "juveniles are more capable of change than are adults and that as

a result, their actions are less likely to be evidence of irretrievably depraved character." *Id.* at 75 (internal quotation marks omitted). Additionally, "the district court should recognize that a lengthy prison sentence without the possibility of parole . . . is appropriate, if at all, only in rare or uncommon cases." *Id.* (internal quotation marks omitted). "At the same time, it bears emphasis that while youth is a mitigating factor in sentencing, it is not an excuse." *Id.*

Huffman concedes that the district court did not impose any mandatory minimums as part of his sentence. However, he maintains his long aggregate sentence of sixty years is similar to the sentence considered by our supreme court in *Null*, 836 N.W.2d at 71, and he should be afforded the same protections. He maintains the district court was required to "make *Miller* findings" and that it "cannot shirk its duty . . . by foregoing imposition of the mandatory minimum." He maintains his was not a *Miller* hearing because the court "focus[ed] almost entirely on the nature of the offense" and "the court's reference to having considered [his] age . . . amounts to only a generalized notion of taking age into consideration."

In *Null*, our supreme court held that a 75-year sentence with a mandatory minimum of 52.5 years based on the aggregation of mandatory minimum sentences "trigger[ed] the protections to be afforded under *Miller*." 836 N.W.2d at 71. Namely, the court held that Null should receive "an individualized sentencing hearing to determine the issue of parole eligibility." *Id.* The court continued:

> [W]e believe that while a minimum of 52.5 years imprisonment is not technically a life-without-parole sentence, such a lengthy sentence imposed on a juvenile is sufficient to trigger *Miller*-type

protections. Even if lesser sentences than life without parole might be less problematic, we do not regard the juvenile's potential future release in his or her late sixties after a half century of incarceration sufficient to escape the rationales of *Graham* or *Miller.* The prospect of geriatric release, if one is to be afforded the opportunity for release at all, does not provide a "meaningful opportunity" to demonstrate the "maturity and rehabilitation" required to obtain release and reenter society as required by *Graham* [*v. Florida*]*,* 560 U.S. [48,] ___, 130 S. Ct. [2011,] 2030, 176 L. Ed. 2d [825] 845–46 [(2010)].

*Id.*

In *Lyle*, 854 N.W.2d at 404 n.10, our supreme court explicitly limited the need for *Miller* hearings, stating:

To avoid any uncertainty about the parameters of the resentencing hearing and the role of the district court on resentencing, we reiterate that the specific constitutional challenge raised on appeal and addressed in this opinion concerns the statutory imposition of a minimum period of incarceration without parole equal to seventy percent of the mandatory sentence. The holding in this case does not address the mandatory sentence of incarceration imposed under the statutory sentencing schema or any other issues relating to the sentencing schema. Under article I, section 17 of the Iowa Constitution, the portion of the statutory sentencing schema requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed without a prior determination by the district court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller* and further explained in *Null.*

Huffman received a longer sentence than Null did, but here the district court did not impose any mandatory minimums. As the court advised Huffman at sentencing:

I need to advise you that the 60-year term does not necessarily mean that you will serve 60 years. The amount of time can be reduced by nearly one half for educational credit, good time credit, and work credit. The amount of time that you have to serve is entirely up to the parole board and you may be eligible for parole before the sentence is discharged.

Because the district court provided Huffman a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" and did not impose any mandatory minimums, there is no need for a separate individualized hearing. *See Null*, 836 N.W.2d at 67; *see also Graham*, 560 U.S. at 75.

**IV. Conclusion.**

Because we find the expert testimony allowed in over trial counsel's objection was cumulative, Huffman was not prejudiced by its admission, and reversal is not warranted. Because error was not preserved on the other testimony Huffman complains of, we analyze his claims of error under an ineffective-assistance framework, and we find he has not established he was prejudiced by counsel's failure to object. Moreover, we find Huffman's trial counsel had no duty to move to dismiss the strict liability crimes as violating Huffman's right to due process. Finally, because the district court provided Huffman a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," and did not impose any mandatory minimums, there is no need for a separate individualized hearing. We affirm.

**AFFIRMED.**